UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL HANNON,<br>　　*Plaintiff*,<br><br>　　v.<br><br>EDWARD MALDONADO, *et al.*,<br>　　*Defendants*. | Nos.　3:15-cv-426 (JAM)<br>　　　　3:15-cv-446 (JAM) |

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Michael Hannon was an inmate in the custody of the Connecticut Department of Correction. He believes that he was subject to unconstitutional conditions of confinement, denied needed medical care, maliciously housed with other inmates of a different race, and retaliated against for making complaints, filing grievances, and filing lawsuits. He has filed two complaints *pro se* and *in forma pauperis* seeking relief under 42 U.S.C. § 1983 for alleged violations of the U.S. Constitution, and I conclude that these two cases should be consolidated.[1] For the reasons set forth below, I also conclude that plaintiff has alleged plausible grounds for relief for some of his claims against some of the defendants, and this case will proceed. Although I conclude that plaintiff has adequately alleged some of his claims, this ruling does not constitute any conclusion that plaintiff's claims have actual merit.

---

[1] A court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42. "The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Because these two separately captioned cases concern conduct at Osborn Correctional Institution during overlapping time periods, involve some of the same conduct, and are brought against overlapping defendants, I will consolidate the cases in the interests of judicial economy. *See Devlin v. Transp. Comm. Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (district court should consider judicial economy in deciding whether to consolidate).

**BACKGROUND**

The following facts are alleged in the complaints and accepted as true only for purposes of this initial ruling. Between January 2015 and January 2016, plaintiff was incarcerated at Osborn Correctional Institution ("Osborn"). Plaintiff brings claims against Correctional Managed Health Care and six individual defendants: Department of Correction Commissioner Scott Semple, Warden Edward Maldonado, Deputy Wardens Sandra Barone and Gary Wright, Counselor Miller, and Richard Furey.[2]

In his first-filed complaint, plaintiff alleges the following. Plaintiff has filed several complaints with the Commissioner of Correction, grievances, and lawsuits against various counselors, and other staff members at Enfield Correctional Institution, where he was previously incarcerated. Prior to his transfer to Osborn, mental health officials within the Department of Correction had gathered data generated by Correctional Managed Health Care pertaining to his private mental health records to create a profile of him for purposes of determining types of inmates with whom he might be compatible. Plaintiff claims that Maldonado, Barone, and Wright directed custody officials at Osborn to use the information relating to his profile to place him in cells with younger cellmates of other races and cultural backgrounds. In addition, his cellmates have all been members of a gang and have subjected him to derogatory remarks about his race.

Plaintiff further claims that the housing units in which he was confined at Osborn have been run by minority staff members who give preferential treatment to minority inmates and permit those inmates to control the conditions within the housing units. He alleges that he was

---

[2] The second-filed complaint also lists Olive Scott in the caption but does not mention her or allege any claims against her in the body of the complaint. Accordingly, she will be dismissed from the case.

eligible to be considered for community release since October 2014 but that Miller refused to complete the paperwork that would allow him to be released. No. 3:15-cv-426, Doc. #1 at 5.[3]

Plaintiff also alleges that he was housed at Unit E from January 29, 2015, to February 16, 2015. While in Unit E, prison officials deprived him of a single cell (and he was forced to share a 20-square-foot cell with another inmate), recreation and exercise, a job, programs, adequate ventilation and heat, and they forced him to live in unsanitary conditions and eat unsanitary food. The poor ventilation, which included extreme dust and mold, caused plaintiff's blood pressure to rise and the development of congestion, sinus infections, and headaches.

After being transferred to Unit D on February 16, 2015, plaintiff's conditions of confinement grew worse, forcing him to endure below-freezing temperatures during the months of February and March. Plaintiff subsequently notified Maldonado, Barone, and Semple about the conditions in Unit E, notified Wright about the freezing temperatures, generally, and notified Maldonado and Barone about the conditions in Unit D. Neither defendant took any action to remedy the conditions and, indeed, plaintiff contends Maldonado and Barone ensured that conditions grew worse in retaliation for his complaint.

During his stay at Osborn, plaintiff also suffered from Hepatitis C and was subject to treatment by Correctional Managed Health Care, the correctional facility's health provider. During this time, plaintiff was denied treatment for his Hepatitis C condition by Nurse Beth Shaw (not named as a defendant) and Furey because he was eligible for community release. Moreover, under Correctional Managed Health Care's certified nursing assistant program for inmates, plaintiff's fellow inmates were given access to his medical records.

---

[3] The first-filed complaint also alleges several claims regarding the conditions of his confinement that are reiterated, and described in more detail, in the second-filed complaint.

Plaintiff was transferred to Willard-Cybulski Correctional Institution in January 2016. After his transfer, plaintiff was denied outdoor recreation despite mild temperatures and fair weather. Plaintiff alleges that it is a policy across all three correctional institutions to prohibit outside recreation for all inmates from approximately November through May.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* The allegations of a *pro se* plaintiff's complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Conditions of Confinement*

Plaintiff alleges that a number of conditions of his confinement at Osborn violated the Eighth Amendment. The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. To prevail on an Eighth Amendment claim

4

alleging unconstitutional conditions of confinement, (1) "the deprivation alleged must be, objectively, sufficiently serious," such that "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and (2) the defendant prison official's state of mind must be at least "one of deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official may be found to be deliberately indifferent in a number of ways, including by omission if she learns of the inmate's complaints and fails to act within her responsibility to respond to unconstitutional practices. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).

Plaintiff alleges that he was forced to sleep on the floor, endure below-freezing temperatures, consume cold and unsanitary food, and remain in a small cell for 23 hours a day. He also contends that he informed prison officials, including Maldonado, Semple, Wright, and Barone about these conditions, and they failed to act to remedy them.

Plaintiff alleges that he was exposed to below-zero temperatures on several nights—and regularly to 20-degree temperatures—without the benefit of a blanket and for prolonged periods of time. Courts have long held that exposure to the cold can satisfy the first prong of a cruel and unusual punishment claim under the Eighth Amendment. *See Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (collecting cases). At this stage, plaintiff's allegations are sufficient for the case to survive insofar as they relate to freezing temperatures.

In addition, plaintiff claims that Maldonado and Barone retaliated against him for complaining about these freezing temperatures by instructing correctional officers to leave the windows open even longer, and to make the cell block even colder. Since plaintiff alleges that the officers made his conditions worse shortly after he complained about them to Maldonado and

Barone, I conclude that plaintiff has also stated a plausible claim for retaliation at this stage. *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (temporal proximity is circumstantial evidence of retaliation in First Amendment prisoner cases).

Plaintiff also alleges that he was "double-celled in a cell that only provides 10 total square [feet] of floor space per inmate." Case No. 15-cv-446, Doc. #1 at 8. While it is not a *per se* constitutional violation to double-cell inmates, such conditions can rise to a constitutional violation if the overcrowding leads to "deprivations of essential food, medical care, or sanitation." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *see also Sosa v. Lantz*, 2010 WL 3925268, at *5 (D. Conn. 2010) (allowing *pro se* prisoner complaint to proceed where plaintiff alleged 28-square-feet per inmate in a double-cell and accompanying unsanitary conditions). Plaintiff alleges that, as a result of double-celling, his cell was unsanitary, with mold growing in the air duct, on the vent, and on the wall. He alleges that his food was served from an unsanitary cart that had dried blood, spit, and old food on it, and that his food tray was placed on an extremely unsanitary floor and was consistently contaminated. Plaintiff has alleged the unsanitary conditions accompanying double-celling that, on plausible facts, could amount to a denial of the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). At this early stage, and in light of plaintiff's *pro se* status, these allegations relating to double-celling initially suffice to state a claim for a violation under the Eighth Amendment.

Plaintiff also alleges that he was denied medical treatment for Hepatitis C, as part of a policy not to treat any inmate for Hepatitis C who was eligible for community release, as plaintiff was. Plaintiff does not specifically describe the seriousness of his condition or what injuries he has suffered as a result of the lack of treatment, but he does elsewhere in the complaint allege that he has suffered from "severe physical deterioration" and that he suffers

from "preexisting life threatening illnesses" that have been aggravated. *See Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006) (prisoner's statement that he suffered pain as a result of delay in treatment for Hepatitis C infection sufficient to satisfy objective prong of Eighth Amendment test). Plaintiff alleges that defendants Furey and Correctional Managed Health Care were aware of his condition and denied him care. At this stage, these allegations suffice to state a claim upon which relief can be granted as to Furey for deliberate indifference to safety.

But the claim cannot survive against Correctional Managed Health Care. To state a claim for relief under § 1983, plaintiff must allege that his constitutional rights were violated by a *person* acting under color of state law. *See* 42 U.S.C. § 1983. A state agency is not a person within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995). Correctional Managed Health Care is "a division of a state agency, the University of Connecticut Health Center." *Jolley v. Corr. Managed Health Care*, 2009 WL 233667, at *3 (D. Conn. 2009). Because it is not a person for purposes of § 1983, the claims against Correctional Managed Health Care will be dismissed. *See id.*; *Walker v. State of Connecticut*, 2006 WL 1981783, at *2 (D. Conn. 2006).

Additionally, plaintiff seeks injunctive relief to halt the allegedly unconstitutional conditions of confinement that he suffered at Osborn. But plaintiff is no longer incarcerated at Osborn, and is concededly no longer subject to those conditions he complains of. His claims for injunctive relief regarding Osborn are therefore moot and will be dismissed. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief").

In sum, plaintiff's claims for monetary relief regarding the temperature, overcrowding, and unsanitary conditions will proceed against Maldonado, Semple, Wright, and Barone. The claim for monetary relief for deliberate indifference to safety based on denial of medical care will proceed against Furey. The claims against Correctional Managed Health Care and all claims for injunctive relief will be dismissed.

### *Discrimination Based on Race and Cultural Characteristics, and First Amendment Retaliation*

Plaintiff next alleges that defendants used his private mental health information to house him with cellmates who were non-white and generally of "opposite cultural characteristics" to plaintiff, and did so in order to dissuade him from pursuing litigation against them. No. 15-cv-426, Doc. #1 at 6. He further alleges that the "minorities" in his cell block were treated better than the white men, like plaintiff, in that the correctional officers have awarded many privileges solely to minorities. He alleges that defendants Maldonado, Wright, and Barone instituted this policy of housing him with inmates of other races, *id.* at 5–7, but does not allege that any named defendant caused or was aware of the alleged preferential treatment people of other races received, *id.* at 8. Because he does not allege that any named defendant was responsible for the preferential treatment, those claims will be dismissed.

The claims based on plaintiff's being housed with cellmates of other races and cultural characteristics will also be dismissed. I construe these claims as alleging both unconstitutional conditions of confinement under the Eighth Amendment and retaliation for the exercise of First Amendment rights. As noted above, in order for an Eighth Amendment challenge to survive, plaintiff must allege that "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Plaintiff has alleged that he was deprived of an opportunity, among other things, to develop friendships with other

inmates of similar cultural characteristics, but has not alleged that he has suffered any harm that would rise to the level of a "denial of the minimal civilized measure of life's necessities." It is not cruel and unusual punishment to be housed with cellmates of a different race.

To state a claim for First Amendment retaliation, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Further, courts in this circuit treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 352; *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012). On these allegations, I cannot conclude that being housed with inmates of a different race and cultural background would deter a similarly situated individual from exercising his constitutional rights. Plaintiff has not alleged that he suffered any adverse action for First Amendment retaliation purposes.

Further, while Plaintiff alleges that defendants Maldonado, Barone, and Wright instituted the policy of housing him with minority inmates in "retaliation against [plaintiff] for having filed grievances and lawsuits against them," Doc. #1 at 6, he does not identify any particular lawsuits or grievances, name any general time periods when they were filed, or allege any facts that support the claim that there was a causal connection between his filing of grievances and lawsuits and these actions. *See Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir.

2015) (prisoner's "failure to set forth a time frame" in which his appeal of a disciplinary order and the adverse action took place "preclude[d] [an] inference of a causal relationship" between them and warranted dismissal of his First Amendment retaliation claim). Accordingly, because plaintiff does not properly allege either that he suffered an adverse action or that there was a causal connection between his protected speech and any alleged adverse action, the retaliation claim will be dismissed.

### *Failure to Be Approved for Community Release*

In his first-filed complaint, plaintiff claims he has been eligible to be considered for community release since October 2014. He alleges that, upon his arrival at Osborn, Miller failed to complete documentation to be submitted to the warden for approval of his release into the community. A prisoner has no constitutionally or federally protected right to be released prior to the expiration of his or her sentence. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Brantley v. Armstrong*, 2000 WL 631395, at *3 (D. Conn. 2000). Additionally, plaintiff claims that Miller's alleged refusal to submit a residential release package to the warden was made for retaliatory reasons. But plaintiff does not allege any facts to suggest there was any causal connection between any protected activity on behalf of plaintiff and Miller's actions, and therefore does not state a claim for plausible relief for First Amendment retaliation. Because plaintiff has not alleged that Miller violated his federally or constitutionally protected rights, all claims against defendant Miller will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### *Motion for Order to Show Cause*

In addition to his complaints, plaintiff has filed a motion seeking injunctive relief to prevent prison officials at Willard from denying him outdoor recreation. No. 15-cv-446, Doc. #7.

The warden at Willard is not a named defendant in this action. Nor has plaintiff asserted a claim regarding recreation opportunities at Willard in the complaint. Accordingly, the motion will be denied.

## CONCLUSION

The Court enters the following orders:

**(1)** The cases, No. 15-cv-426 (JAM) and No. 15-cv-446 (JAM) are **CONSOLIDATED**. The Motion for Order to Show Cause [No. 15-cv-446, Doc. # 7] is **DENIED**. All claims against Olive Scott and Correctional Managed Health Care are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claims regarding conditions of confinement at Osborn from January to March 2015 will proceed against Maldonado, Semple, Wright, and Barone in their individual capacities, the First Amendment retaliation claim will proceed against Maldonado and Barone in their individual capacities, and the Eighth Amendment claim of deliberate indifference to the plaintiff's Hepatitis C condition will proceed against Furey in his individual capacity.

**(2)** The Court observes that the plaintiff mentions Officers Hunter, Gardner, King, and Cosmer, Lieutenants Brown and Strange, Unit Manager Devonia Long, Captain Manning, Nurse Beth Shaw, and Dr. Bretton in the body of the complaint. Those individuals, however, are not listed in the caption of the complaint. As such, they are not defendants in this action. *See* Fed. R. Civ. P. 10(a).

**(3)** **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work address for each of the following defendants: Edward Maldonado, Scott Semple, Sandra Barone, Gary Wright, and Richard Furey and mail a waiver of service of process request packet to each defendant in his or

her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(4)** Defendants Maldonado, Semple, Wright, Barone, and Furey shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(5)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

**(6)** All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

**(7)** The Department of Correction Offender Information Search indicates that plaintiff has been paroled. Accordingly, an in-person scheduling conference, at which plaintiff and counsel for defendants must appear, will be held on **Tuesday, April 4, 2017, at 3:00 p.m.** in Courtroom Three, 141 Church Street, New Haven, Connecticut.

**(8)** Plaintiff shall advise the Court of his current address. If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff

must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or the attorney for defendants of his new address.

    It is so ordered.

    Dated at New Haven, Connecticut this 29th day of December, 2016.

    /s/ *Jeffrey Alker Meyer*
    Jeffrey Alker Meyer
    United States District Judge